1, $2,850, and accessory equipment as per schedule, $2,052.71, to be located at Erie, Pa., on land of licensee. The price, $4,902.-71, was payable cash with order, $490; cash on shipment, $1,961.36; and the balance payable in nine equal payments, of $272.37 each, secured by notes, as designated therein. It was specified in the order or contract that the title to the machinery should not pass to the licensee, or any other person, until payment in full of the consideration. The contract was accepted by the mill company on June 22, 1921, and the machinery installed in the month of August following. The contract was recorded on March 2, 1922, in the prothonotary's office of Erie county, in the Miscellaneous Docket. The bankrupt on May 8, 1922, gave a mortgage on the property in which the mill was installed, the mortgagee having no actual notice of the existence of the license contract.

[1, 2] The referee held that the contract in question was a conditional sale, and in this conclusion we concur. Full possession being given under the conditional sale of the machinery in question, the petitioner's case must fail as against the creditors of the bankrupt, unless there was a full compliance with the provisions of the Conditional Sales Act of Pennsylvania, approved June 7, 1915 (P. L. 866 [Pa. St. 1920, §§ 19727–19734]). Section 4 of that act, which specifies what the contract must contain, provides: "F. A description sufficient for identification and location of such real property or chattels real."

No such description or identification appears in the contract. The only words bearing on that matter are, "to be located at Erie, Pa., on land owned by the licensee." As it appears that the latter was the owner of other real estate, it would be hard to conceive a more faulty description. This is a fatal departure from the requirements of the act. In other respects pointed out by the referee the provisions of the act of assembly were not strictly complied with.

The order of the referee refusing the petition for the return of the property was in harmony with the law as we view it, and is therefore affirmed.

---

**In re ABT et al.**

(District Court, W. D. Pennsylvania. March, 1924.)

No. 10945.

Bankruptcy ⊚⟝140(1)—Bankrupt purchaser of truck may not, by agreement with seller, change sale into bailment contract.

As trustee stands in position of execution creditor, where bankrupt acquired possession of motor truck under sale agreement, he could not subsequently, by agreement with seller, convert sale into bailment contract, and seller, who has acquired possession under such bailment contract, may be required to redeliver to trustee.

In Bankruptcy. In the matter of Harry A. Abt and Frank W. Cook, doing business as the Economy Garage. On review of referee's order directing Hare & Chase, Inc., to deliver a motor truck to trustee. Findings affirmed.

SCHOONMAKER, District Judge. This is a summary proceeding to compel Hare & Chase, Inc., to deliver to the trustee a motor truck, which that company had obtained possession of by replevin suit after adjudication in bankruptcy, and now come to the court on petition to review the finding and order of the referee, directing them to deliver the truck in question to the trustee. The question involved is whether the bankrupts in the first instance obtained the truck in question by purchase or by lease under a bailment contract.

It appears that on or about September 1, 1922, the bankrupts made a deal with the agent of the Thomart Motor Truck Company, of Kent, Ohio, for the purchase of a motor truck, and that on October 12, 1922, F. W. Cook, of the bankrupt firm, went to Kent and concluded the deal, by which he purchased the truck, paid $225 down in cash, gave the firm's note for $275 to apply on the purchase price, and then took delivery of the truck, and at the same time agreed in writing "to sign papers for balance of selling price." The contract up to this time was clearly one of sale and purchase. The next day the Thomart Motor Truck Company mailed the bankrupts at Erie an invoice of the sale, by which it appears that they construed the deal as a sale. Then, shortly afterwards, in pursuance of the memorandum written at the time of the sale on October 11, 1922, the parties executed and delivered a conditional sale contract, dated October 14, 1922, conveying the truck in question. This contract was assigned by the Thomart Motor Truck Company to Hare & Chase, Inc., the present claimants of the truck in question. Again, later, on the allegation that the execution of the conditional sale contract was a mistake, the parties substituted a bailment contract for the conditional sale contract, which was also assigned to Hare & Chase, Inc., and by virtue of which they are now claiming the truck in question.

Undoubtedly the parties have the right, as between themselves, to make and change their contracts as they desire; but there can

be no doubt in the first instance that they made a sale contract, and that by virtue thereof the truck in question was delivered to the bankrupt firm. As the trustee stands under the act of Congress in the position of an execution judgment creditor, there is no doubt but that the subsequent attempt on the part of the parties to convert the sale into bailment contract was abortive, and that the referee was clearly right in his findings, and that his order on Hare & Chase, Inc., for the delivery of the truck should be affirmed.

― ―――

## In re HINER et al.

(District Court, W. D. Pennsylvania. December 13, 1923.)

### No. 11124.

**1. Bankruptcy ☞346—Mercantile tax preferred claim.**

Pennsylvania mercantile tax based on volume of business done is a preferred claim under Bankruptcy Act, § 64a (Comp. St. § 9648).

**2. Bankruptcy ☞346—Pennsylvania mercantile tax not proratable claim.**

Pennsylvania mercantile tax based on volume of business done is not a claim which may be prorated according to length of time during which business was conducted.

In Bankruptcy. In the matter of Eldridge Clark Hiner and Lloyd Holden Hiner, individually and as partners trading as Hiner Bros. Review of referee's findings as to amount of priority of mercantile tax. Findings overruled.

SCHOONMAKER, District Judge. This case is before the court on petition of the county treasurer of Greene county, Pa., asking the court to review the action of the referee in bankruptcy in prorating a preferred tax claim filed by said treasurer for unpaid mercantile tax of the state of Pennsylvania in the sum of $5.31, when the full amount of the claim as filed amounted to $12.75.

[1] The referee found that this mercantile tax was a preferred claim under section 64a of the Bankruptcy Act (Comp. St. § 9648), and is entitled to be paid as such. We concur in the finding of the referee on this point, and confirm his finding in that respect on his opinion filed.

[2] We do not concur in the finding of the referee that this tax should be allowed and paid only for the pro rata part of the year that the bankrupt was in business after the tax became due and payable on May 1, 1923. Under the Mercantile License Tax Act of Pennsylvania (Pa. St. 1920, § 14727 et seq.) this tax became due and payable on May 1, 1923, and was assessed and based on the volume of business done by the bankrupt during the preceding year, and the tax should, in our opinion, have been allowed as a preferred claim by the referee for the amount filed, $12.75. We are of the opinion that this tax is not subject to be prorated for the length of time that the bankrupt was in business after the tax became due.

We note the decision quoted by the referee in the Matter of Ajax Dress Co., Inc., 1 Am. Bankr. Rep. (N. S.) 116, 290 Fed. 950,[1] in which the Circuit Court of Appeals of the Second Circuit affirmed an order of the District Court of New York apportioning a corporation license tax of the state of New York for doing business within the state of New York. In the New York case the tax was apportioned by reason of the fact that the tax is a franchise tax under which the corporation exists, and is not in the nature of a mercantile tax such as levied by our Pennsylvania Mercantile Tax Act, which became due, in this instance, on May 1, 1923.

We therefore overrule the finding of the referee in allowing this claim at $5.31, and reinstate it as a preferred claim to the extent of $12.75.

An order may be entered accordingly.

――――

## In re ARCADIA PRINT WORKS.

(District Court, D. Massachusetts. March, 1923.)

### No. 29094.

**Bankruptcy ☞482(3)—Counsel of petitioning creditors in involuntary petition subsequently dismissed entitled to reasonable fees.**

Counsel for petitioning creditors in involuntary petition in bankruptcy under which receivers were appointed, with benefit to creditors, is entitled as matter of right to reasonable fee out of the estate, though petition was subsequently dismissed as result of adjudication on voluntary petition, regardless of motive with which parties proceeded.

In Bankruptcy. In the matter of the Arcadia Print Works. On review of referee's orders refusing counsel fees to petitioning creditors. Reversed and remanded.

Richard R. Sullivan, of Boston, Mass., for petitioning creditors.

Joseph W. Worthen, of Boston, Mass., for trustee.

BREWSTER, District Judge. Petitioning creditors in an involuntary petition in bankruptcy filed a petition with the referee for an allowance to cover their expenses in connection with the involuntary petition, and

――――

[1] Order reversed in part. New York v. Jersawit, 263 U. S. 493, 44 Sup. Ct. 167, 68 L. Ed. 405.